OPINION BY STEVENS, P.J.E.:
Appellant Brian Golson[1] appeals from the judgment of sentence of fifty (50) years *996 to one hundred (100) years in prison entered in the Court of Common Pleas of Montgomery County on August 9, 2016, following his convictions of numerous sexual offenses. For the reasons that follow, we vacate the portion of Appellant's sentence finding him to be a sexually violent predator and affirm in all other respects.
The trial court detailed the facts and procedural history herein as follows:
In or about September 2014, Amber Beck was sexually assaulted in Pottstown, Montgomery County. N.T. May 28, 2015[,] at 54-55. On a date prior to the assault, a car in which [Appellant] was a passenger pulled over and offered Ms. Beck a ride, which she accepted. Id. at 57-58.[2 ] She knew the driver and had previously used drugs with him; [Appellant] was a passenger in the car and introduced himself as Breon. Id. at 138; 57-58. On the evening of the assault, Ms. Beck was walking home, alone, from a convenience store. Id. at 58. On her way to get cigarettes from another store, she ran into [Appellant] on the corner of King and Hanover Streets. Id. at 59. She recognized him from their previous encounter. Id. He asked her for a cigarette, which she gave him. Id. at 60. She told him she was on her way to get more, at which time he offered to walk with her because "pretty young girls shouldn't be walking around Pottstown at night." Id. She thought he seemed friendly and protective and that she could trust him. Id. He convinced her to come with him to a friend's house and told her that they could get cigarettes from the friend. Id. They proceeded to walk to a house on Walnut Street. Id. at 61. When they arrived at the house, there were three men sitting on the porch; [Appellant] signaled to the men and they told him to walk into the alley. Id. at 62. [Appellant] instructed Ms. Beck to sit on the curb. Id. At this point, he spoke with a man he identified as his nephew in the backyard, out of her earshot. Id. at 63-64. They returned to the alley and the man identified as the [Appellant's] nephew told her to get on the ground, when she did not comply, she was kicked in the back. Id. at 64. She lay on the ground. Id. at 65.
At this point, she heard [Appellant] and his nephew discussing a "jimmy," which she understood to be slang for a condom. Id. Two additional men were outside at this point, but Ms. Beck could not see them. Id. There was further discussion about obtaining a condom. Id. [Appellant] told the men that he knew she was clean. Id. Fearing she was about to be raped, Ms. Beck told the men she had a terminal pregnancy. Id. at 66. [Appellant] said she could do other things; at which point his nephew indicated it was her lucky day. Id. At this time, the additional men went back inside leaving the [Appellant] and his nephew in the alley with Ms. Beck. Id. at 67. [Appellant] told her to get up, and she tried to get away, but [Appellant] pulled out a knife. Id. at 68. He then threatened to kill her and her fiancé who was in jail at that time. Id. He held the knife to her collarbone and told her if she helped him, he'd help her. Id. at 69. [Appellant's] nephew told her to get back on the ground, and she did. Id. He then pulled down his pants and told her to perform oral sex on him, which she did. Id. at 70. At some point, he ordered her to get up and pulled down her pants and began touching her before forcing her to get back down and finish Id. at 71. The nephew ejaculated, and she tried *997 to get away, but [Appellant] followed her. Id. at 71-72. [Appellant] told her that he wanted to help her get cleaned up and that there was a house they could go to. Id. at 73. Afraid to walk away from him, he took her to "Uncle Dave's" house on North Charlotte Street. Id.
On the porch, he took out her pack of cigarettes, which he took from her when she way laying in the alley, and took crack cocaine out of the pack and proceeded to smoke it. Id. at 74. Ms. Beck indicated that she was going to go home[.] [Appellant] told her to sit on his lap if she wanted her cigarettes and her money back. Id. at 75. He pulled her closer to him and reached into her bra. Id. He also pulled down her pants and fondled her butt. Id. at 76. When she told him no and that she wanted to leave, he became aggressive. Id. She told him to keep her money and cigarettes and pulled up her pants and started to leave. Id. When she made it to the street, she ran until she returned to her home. Id. at 77. Upon arriving home, she told her roommate some of what happened to her, omitting the sexual assault. Id. He urged her to call the police, but she refused because [Appellant] had threatened her and her fiancé. Id.
On October 16, 2014, Ms. Beck went to the Pottstown Police station because her roommate was arrested. Id. at 87. While she was on her way to the station, [Appellant] pulled up beside her in a gray minivan and proceeded to follow her down High Street. Id. He parked in the lot across from her apartment and told her he would wait for her. Id. As a result, Ms. Beck reported the sexual assault to police on that date. Id. at 89.
Mindy Cushman met [Appellant] in or around August or September 2014 when he approached her as she sat on her front steps of her apartment at 155 King Street in Pottstown, Montgomery County, waiting for her son to come home from school. Id. at 181.[3 ] He took her hand, kissed it, and introduced himself. Id. She ignored him, and when her boyfriend arrived home she went upstairs. Id. at 182. In or around late August 2014, Cushman was walking home by herself. Id. [Appellant] approached her at King and Charlotte Streets, grabbed her by the left arm and told her not to scream or he would cut her up into little pieces. Id. She felt something pressed into her low back, which she thought may have been a gun. Id. at 183. He led her up Charlotte Street and took her into an abandoned building in an alley. Id. At that point, he handed her off to a tall, light-skinned African American male with short hair, who dragged her by her hair backward, up the stairs into the abandoned house. Id. Once inside the house, the unknown man forced her onto all fours and anally raped her. Id. at 186. The man then brought her back downstairs to [Appellant], at which time he tossed [Appellant] small baggies containing what Cushman recognized to be crack cocaine or cocaine. Id. at 187.
[Appellant] then took her by the arm and led her across the alley into a backyard. Id. at 188. He then pushed her to the ground, pressed his chest against hers and removed her pants. Id. Then, he vaginally raped her. Id. at 189. When he finished, she pulled her pants up and ran home where she sat in her truck and thought about what happened to her. Id. at 189-190. She was worried that her boyfriend would think she was cheating on him. Id. She removed her underwear *998 and threw it out and changed into clean clothes that were in her truck. Id. She did not tell her boyfriend what happened to her. Id.
Ms. Cushman reported her rape to the police in October of 2014. Prior to going to the police, her friend showed her a picture of a man Cushman recognized as [Appellant]. Id. at 193. She also spoke with Amber Beck, who[m] she had known for a short time. Id. at 194. She showed Amber the picture and ultimately both women went to the police. Id.
On June 1, 2015, following a jury trial, [Appellant] was convicted of Criminal Conspiracy-IDSI Threat of Forcible Compulsion[2](Amber Beck); Criminal Conspiracy-Sexual Assault[3](Amber Beck); Indecent Assault-Threat of Forcible Compulsion[4](Amber Beck); Indecent Assault-Without Consent[5](Amber Beck); Terroristic Threats[6](Amber Beck); Criminal Conspiracy-Rape By Threat of Forcible Compulsion[7](Mindy Cushman); Criminal Conspiracy-Aggravated Indecent Assault[8](Mindy Cushman); Rape-Threat of Forcible Compulsion[9](Mindy Cushman); Sexual Assault[10](Mindy Cushman); Terroristic Threats [11](Mindy Cushman).
On August 18, 2015, the Commonwealth filed a Praecipe for a Sexually Violent Predator Hearing. On October 26, 2015, the Commonwealth file[d] a Notice of Intent to Seek Mandatory Twenty-Five Year Sentence. On November 4, 2015, [Appellant] file[d] a Post-Verdict Motion for a New Trial Based on After-Discovered Evidence. A hearing on the motion was held on January 4, 2016; the motion was denied by Order of January 29, 2016. On April 4, 2016 sentencing counsel entered his appearance.
[Appellant] was sentenced on August 9, 2016[,] to an aggregate term of fifty (50) to one hundred (100) years' incarceration in a State Correctional Institution, which included consecutive, mandatory minimum sentences pursuant to 42 Pa. C.S.A. § 9718.2 for Criminal Conspiracy-Rape By Threat of Forcible Compulsion (Mindy Cushman) and Criminal Conspiracy-IDSI Threat of Forcible Compulsion (Amber Beck). Mandatory minimum sentences were also imposed for Indecent Assault-Threat of Forcible Compulsion (Amber Beck), Rape-Threat of Forcible Compulsion (Mindy Cushman), concurrent to the Conspiracy sentences. He was also designated a sexually violent predator as defined in 42 Pa. C.S.A. § 9799.12.
[Appellant] filed a post-sentence motion on August 19, 2016. Following a hearing, the motion was denied by Order of December 16, 2016. The same date, sentencing counsel filed a Motion to Withdraw as counsel. On January 11, 2017, sentencing counsel filed a notice of appeal. On January 17, 2017, the [c]ourt granted sentencing counsel's Motion to Withdraw and appointed new counsel. The same date, the [c]ourt directed [Appellant] to produce a statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On January 26, 2017, the [c]ourt appointed current appellate counsel. On February 15, 2017, [Appellant] was granted additional time to produce a statement of matters complained of on appeal. [Appellant] has since complied with that directive.
[2] 18 Pa. C.S.A. § 903(a)(1).
[3] 18 Pa. C.S.A. § 903(a)(1).
[4] 18 Pa. C.S.A. § 3126 (a)(3).
[5] 18 Pa. C.S.A. § 3126 (a)(1).
[6] 18 Pa. C.S.A. § 2706(a)(1).
[7] 18 Pa. C.S.A. § 903(a)(1).
[8] 18 Pa. C.S.A. § 903(a)(1).
[9] 18 Pa. C.S.A. § 3121 (a)(2).
*999 [10] 18 Pa. C.S.A. § 3124.1.
[11] 18 Pa. C.S.A. § 2706(a)(1).
Trial Court Opinion, filed July 14, 2017, at 1-7. In his brief, Appellant includes the following Statement of Questions Presented:
I. Was [sic] the sentences of 25-50 years for criminal conspiracy to commit rape by threat of forcible compulsion and criminal conspiracy engaging in involuntary deviant sexual intercourse by threat of forcible compulsion illegal because even though they involved two different victims there was no evidence that there was more than one conspiracy involved violating 18 Pa.C.S.A. § 903(c) ?
II. Was the 25-50 year sentences imposed pursuant to 42 Pa.C.S.A. § 9718.2 illegal because this statute is unconstitutional under the case law of Commonwealth v. Wolfe, 636 Pa. 37, 140 A.3[d] 651 (2016) and Commonwealth v. Blakney, 152 A.3[d] 1053 (Pa.Super. 2016) ?
III. Was [sic] the sentence of 25-50 years for indecent assault a misdemeanor of the first degree pursuant to 42 Pa.C.S.A. § 9718.2 illegal as a violation of the cruel punishment provision of Article 1 Section 13 of the Pennsylvania Constitution ?
IV. Was [ ] Appellant's designation as a sexual[ly] violent predator illegal because said designation violates the state and federal constitutions?
Brief for Appellant at 4 (unnecessary capitalization omitted).
In the Summary of the Argument portion of his appellate brief, Appellant indicates he is withdrawing his first and third issues. Brief for Appellant at 9. Appellant explains he is withdrawing the first issue, which was raised for the first time on appeal, so that he can pursue it in a proceeding under the Post-Conviction Relief Act.[4] Brief for Appellant at 12. Appellant further states he is withdrawing his third issue "because of a total lack of merit." Id . at 14. (citing Commonwealth v. Elia , 83 A.3d 254, 265 (Pa.Super. 2013), appeal denied , 626 Pa. 674, 94 A.3d 1007 (2014) (holding, as a matter of first impression, a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9718, pertaining to sentences for offenses against minors, does not constitute an unconstitutionally cruel punishment in violation of Article 1, Section 13 of the Pennsylvania Constitution ) ).[5] Therefore, we proceed to address the merits of Appellant's remaining claims.
In his second issue, Appellant asserts his mandatory sentences of twenty-five (25) years to fifty (50) years' imprisonment imposed pursuant to 42 Pa.C.S.A. 9718.2 are illegal. While Appellant acknowledges the United States Supreme Court's decision in Alleyne v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013),[6] does not apply to *1000 increased penalties where the sole issue is the defendant's prior criminal record, he reasons that the issue herein "is not actually the prior record, but whether [ ] Appellant, Brian Golson, is the same as the defendant, Anthony Hill, who was convicted of rape in 1991." He posits that "[b]ecause the names are different, there must be a factual determination that they are one in the same person. Thus, it is not a determination of prior record, but a determination of identification." Brief for Appellant at 13. Appellant concludes it is inconsequential that "the evidence was overwhelming that Anthony Hill and Brian Golson are one in the same" because the trial court, not the jury ultimately made that finding pursuant to a preponderance of the evidence standard at the time of sentence in violation of Alleyne . Brief for Appellant at 13.
Appellant did not raise the identification theory he presents in his appellate brief in his concise statement of matters complained of on appeal. Instead, he merely stated that "[t]he 25-50 year sentences imposed pursuant to 42 Pa.C.S.A. § 9718.2 was [sic] illegal because this statute is constitutional under the case law of Commonwealth v. Wolfe , 636 Pa. 37, 140 A.3d 651 (2016) and Commonwealth v. Blakney , 152 A.3d 1053 (Pa.Super. 2016) # No. 1885 WDA 2015." See Concise Statement of Matters Complained of on Appeal, filed 3/1/17, at ¶ ll. Pennsylvania Rule of Appellate Procedure 1925 provides that issues not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. See Pa.R.A.P.1925(b)(4)(vii) ; see also Commonwealth v. Lord , 553 Pa. 415, 719 A.2d 306, 308 (1998), superseded by rule on other grounds as stated in , Commonwealth v. Burton , 973 A.2d 428, 430 (Pa.Super. 2009) (en banc ).
Generally, an appellant cannot raise new legal theories for the first time on appeal. Pa.R.A.P. 302(a) ; Commonwealth v. Truong , 36 A.3d 592, 598 (Pa.Super. 2012) (en banc ), appeal denied, 618 Pa. 688, 57 A.3d 70 (2012). Notwithstanding, because Appellant's claim presents a challenge to the legality of his sentence, it is not waived, even though Appellant raised it for the first time in his appellate brief. Commonwealth v. Barnes , 637 Pa. 493, 495, 151 A.3d 121, 122 (2016). Legality-of-sentence claims are not subject to traditional waiver doctrine. Commonwealth v. Wolfe , 636 Pa. 37, 51, 140 A.3d 651, 660 (2016).
In considering Appellant's challenge to the legality of his sentence, we are mindful that our standard of review is de novo , and our scope of review is plenary. Commonwealth v. Gentry , 101 A.3d 813, 817 (Pa.Super. 2014). 42 Pa.C.S.A. § 9718.2, in relevant part, provides for the following sentences for sexual offenders:
(a) Mandatory sentence.-(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction.
*1001 Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).
42 Pa.C.S.A. § 9718.2(a)
Appellant does not dispute that he was convicted previously of a qualifying offense under this statute. Instead, he argues the statute as applied herein required the trial court to make a determination of his identity by a preponderance of the evidence. However, Appellant's attempt to overcome the applicability of Section 9718.2 with this "identity" argument is disingenuous, for our review of the record reveals Appellant admitted at trial that he has been identified as both Anthony Hill and Brian Golson.
Appellant explained at the hearing held on his pretrial motions that Anthony Hill is his birth name, although during the course of the criminal investigation herein it was revealed that Appellant introduced himself to his victims as Brian Golson. N.T., 5/26/15, at 3, 4-5. The trial court asked the parties to reconcile how Appellant would be identified during trial so as to avoid any confusion and indicated it would not permit references to Appellant as "also known as." At this juncture, defense counsel stated: "[s]o there was an arrest from 25 years ago where he was known as Brian Golson, but his name is Anthony Hill." Id . at 5. The parties agreed "the person officially in front of us is Anthony Hill." Id . As stated previously, at no time during trial did Appellant claim that Anthony Hill and Brian Golson were not one in the same.
Prior to trial, the trial court again discussed its concern of the potential prejudice to Appellant were a detective to reference "AKAs for Brian Golson." N.T., 5/28/15, at 4. Specifically, the trial court stated:
And if a detective says that a defendant here today has an AKA or knows him to be a Brian Golson, that again would say he has a prior police contact. Although he may and although it's very relevant, the relevance is outweighed by the prejudice because this jury would then conclude he has had prior arrests.
The [c]ourt did indicate that I believe it can be done simply-it's relevant. If you want to call people who he's used the name Brian Golson with, that's fine. The problem is is [sic] the concept that when a police officer says I know him as Brian Golson, then it connotes that he has been arrested under an alias. So, again, relevant. His name is very relevant, but it's just the AKA or prior police contact. If we can find a way to do it otherwise, then it is relevant.
N.T., 5/28/15, at 4. Appellant did not object to the trial court's directive.
Furthermore, Appellant never challenged the validity or accuracy of his prior conviction or of his being known as both Anthony Hill and Brian Golson at his sentencing hearing. To the contrary, Appellant again conceded that he had referred to himself as Anthony Hill and Brian Golson in the past and had been convicted of a prior rape in 1990. In addition, defense counsel acknowledged Appellant was subject to mandatory sentences as a repeat offender. N.T., 8/9/16, at 51-54, 91-92, 98-102, 105, 118-21, 126-27, 137, 153. In fact, counsel specifically stated "[i]t's our position that the mandatory minimum sentence must be imposed on each of those." Id . at 127.
In Commonwealth v. Baker , 621 Pa. 401, 78 A.3d 1044 (2013), the Pennsylvania Supreme Court held, as a matter of first impression, that the mandatory minimum sentence of 25 years for possession of child pornography as a second offender did not violate the prohibition against cruel and unusual punishment. The Defendant in Baker , like Appellant in the instant case, *1002 was sentenced under a recidivist sentencing scheme. "No Pennsylvania case has applied Alleyne to sentences enhanced solely by prior convictions." Commonwealth v. Lane , 81 A.3d 974, 976 n. 5 (Pa.Super. 2013), appeal denied , 625 Pa. 658, 92 A.3d 811 (2014). "Prior convictions are the remaining exception to Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 [ (2000) ] and Alleyne , [supra ,] insofar as a fact finder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right." Commonwealth v. Hale , 85 A.3d 570, 585 n. 13 (Pa.Super. 2014).
In light of the foregoing, Appellant's reliance on Wolfe and Blakney is misplaced, for those cases did not pertain to 42 Pa.C.S.A. § 9718.2. In Wolfe the Pennsylvania Supreme Court held " Section 9718 does plainly and explicitly require judicial fact finding in its subsection (c)." Id. at 52, 140 A.3d at 660. However, that case did not involve the imposition of a mandatory minimum sentence based on a prior conviction. In Blakney , the appellant challenged the constitutionality of 42 Pa.C.S.A. § 9714.4. In finding that entire provision to be unconstitutional, this Court stated the statute contained a "proof at sentencing" provision in subsection (b) which violated the rule announced in Alleyne and was not severable from the rest of the state. Id . at 1056. More recently, in Commonwealth v. Resto , --- Pa. ----, 179 A.3d 18 (2018), the Pennsylvania Supreme Court clarified:
a conviction returned by a jury to which a mandatory minimum sentence directly attaches is not the same as an aggravating fact that increases a mandatory minimum sentence. In any event, such a conviction is itself a contemporaneous jury determination, and the concern of Alleyne is with sentencing enhancements tied to facts to be determined by a judge at sentencing. See id . at 117, 133 S.Ct. at 2163-64.[1] While recognizing that Section 9718(c)'s prescription for "proof at sentencing" may be awkward and, indeed, superfluous relative to the mandatory minimum sentence imposed by Section 9718(a)(3) -since no proof of any facts is required at sentencing under that provision-such idiosyncrasy has nothing to do with Alleyne .
* * *
[1] This case does not concern previous convictions considered as aggravation at sentencing. Notably, under prevailing federal jurisprudence, such prior convictions are not treated as a type of fact implicating Alleyne . See, e.g . , Commonwealth v. Bragg , 133 A.3d 328, 332-33 (Pa.Super. 2016) (citing, indirectly, Almendarez-Torres v. United States , 523 U.S. 224, 243-47, 118 S.Ct. 1219, 1230-33, 140 L.Ed.2d 350 (1998) ), aff'd , --- Pa. ----, 169 A.3d 1024 (2017) (per curiam ).
Id . at ----, 179 A.3d at 21 (emphasis in original). As such, Appellant is not entitled to relief on this claim.
In his final question presented, Appellant posits his designation as a sexually violent predator (SVP) under SORNA[7] was rendered illegal under the Pennsylvania Supreme Court's decision in Commonwealth v. Muniz , 640 Pa. 699, 164 A.3d 1189 (2017) and this Court's decision in *1003 Commonwealth v. Butler , 173 A.3d 1212, 1215 (Pa.Super. 2017).[8] In Muniz , our Supreme Court held that the registration requirements under SORNA constitute criminal punishment. Id . at ----, 164 A.3d at 1218. In light of Muniz , this Court determined: "[U]nder Apprendi [v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ] and Alleyne [v. United States , 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ] a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him ... likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." Commonwealth v. Butler , 173 A.3d 1212, 1217 (Pa.Super. 2017) (internal quotations and citations omitted). The Butler Court further held "section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." Id. at 1218. The Court therefore concluded that trial courts no longer can designate convicted defendants as SVPs or hold SVP hearings "until our General Assembly enacts a constitutional designation mechanism." Id. The Butler Court directed trial courts to apply only the applicable tier-based registration period, as those periods apply based on the conviction itself, and not due to any additional fact not found, under SORNA's procedures, by the fact-finder. The Court ultimately reversed the order finding the defendant to be an SVP and remanded to the trial court for the sole purpose of issuing appropriate notice of the defendant's tier-based registration period. Id .
Instantly, the trial court imposed SVP status on Appellant on August 9, 2016. N.T., 8/9/16, at 145-46. Appellant filed a post-sentence motion on August 19, 2016, and the trial court denied the same on December 15, 2016. Appellant filed a timely notice of appeal on January 13, 2017. While Appellant's appeal was pending, our Supreme Court decided Muniz on July 19, 2017, and this Court decided Butler on October 31, 2017. In light of Muniz and Butler , Appellant's SVP status constitutes an illegal sentence. Therefore, we are constrained to vacate that portion of Appellant's sentence finding him to be an SVP and remand to the trial court to issue a revised notice to Appellant pursuant to 42 Pa.C.S.A. § 9799.23 (governing reporting requirements of sex offenders). Accordingly, we affirm the judgment of sentence in part but vacate the court's imposition of SVP status and remand with instructions.
Judgment of sentence affirmed in part. SVP designation vacated. Case remanded with instructions. Jurisdiction relinquished.

The record reveals, and the trial court has noted, that while Appellant's birth name is Anthony Hill, he is committed herein under the name of Brian Golson and has previous convictions under that name. Trial Court Opinion, filed July 14, 2017, at 1 n.1. In addition, the captions in the lower court docket identify Appellant as Anthony Hill a/k/a Brian Golson.

Appellant's date of birth is August 14, 1969. Ms. Beck testified at the time of trial that she was twenty-two (22) years of age. N.T., 5/28/15, at 51.

Ms. Cushman was thirty-two (32) years old at the time of trial. N.T., 5/28/15, at 176.

42 Pa.C.S.A. §§ 9541 -9546. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

In Commonwealth v. Wolfe , 636 Pa. 37, 140 A.3d 651 (2016) the Pennsylvania Supreme Court found Section 9718 to be unconstitutional. However, Appellant's crimes were not perpetrated against children, and, as shall be discussed infra , he was properly sentenced pursuant to 42 Pa.C.S.A. § 9718.2.

Therein, the Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, supra , 570 U.S. at 102, 133 S.Ct. at 2155, 186 L.Ed.2d at ----. Applying Alleyne , the courts of this Commonwealth have determined our mandatory minimum sentencing statutes are unconstitutional where the language of those statutes "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence" standard. Commonwealth v. Newman , 99 A.3d 86, 98 (Pa.Super. 2014).

The Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10 -9799.41. SORNA was enacted on December 20, 2011, and became effective on December 20, 2012. SORNA recently was amended on February 21, 2018, by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.

Appellant did not raise his Muniz claim in his Rule 1925(b) statement of errors complained of on appeal, which was filed on March 1, 2017; however, Muniz was not decided until July 17, 2017. Although Appellant raises this claim for the first time on appeal, we may review it. See e.g. Butler (stating that while issues not raised before the trial court are generally waived for appellate purposes, a challenge to the legality of a sentence based on Muniz need not be preserved in the trial court in order to be reviewable).