J-S47012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :          PENNSYLVANIA
   :
v.   :
   :
   :
FREDERICK COATES   :
   :
Appellant   :   No. 1506 WDA 2017

Appeal from the Judgment of Sentence July 19, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014825-2015

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:       **FILED OCTOBER 16, 2018**

Appellant, Frederick Coates, appeals from the judgment of sentence entered on July 19, 2016, following his convictions for indecent assault, unlawful contact with a minor, and corruption of minors.[1] Upon review, we affirm.

The trial court summarized the facts of this as follows:

A.W., the victim in this case, testified at trial that she was eight years old and that her birthday is May 8. A.W. testified that she used to see Appellant when she visited her aunt[,] who A.W. called "Aunt TT[."] A.W. testified that when she was at Aunt TT's house, Appellant, who she called "Mr. Fred," was also in the home and would sometimes be alone in a room with her. She stated that Mr. Fred touched her inappropriately on three separate occasions. The first time Appellant touched her [was when] she was watching cartoons in Aunt TT's room while also playing games on her phone. A.W. testified that Appellant entered the room [and] touched his hand to her vagina over her clothes. The touching ended when

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6318(a)(5), and 6301(a)(1)(ii), respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

A.W. got up and left the room. The second instance occurred in her brother['s] room. A.W.'s sister [] left the room to go to the bathroom, leaving A.W. alone with Appellant. Appellant touched [A.W.'s] vagina with his hand over her clothes while A.W. played video games. He also kissed her on the lips, which she described as different from how her mother kisses her. The third and final incident to which A.W. testified occurred in a [third] room. While she was watching cartoons, Appellant entered the room and touched her in the same manner as he had previously. A.W. identified Appellant in court as the person who had touched her inappropriately.

[] A.W.'s mother [(Mother)] testified that [Aunt TT] was [a paternal cousin] and A.W. spent a lot of time [at Aunt TT's home] prior to [Mother] becoming aware of the allegations of abuse. [Mother] testified that Appellant was a childhood friend of [Aunt TT] who [Mother] did not know [before the prior] summer. [Mother] noticed a change in A.W.'s behavior and asked her why she was acting so mean. [Mother] testified that A.W. put her head down and said it was "the man at Aunt TT's house, the bald guy." A.W. and [Mother] went to [Aunt TT's] house and A.W. said it was "Fred" and started crying hysterically.

Detective Nicholas Bobbs, testified that he is a 15-year veteran of the City of Pittsburgh Police Department, who is currently assigned to the Sex Assault Family Crisis Unit. Pursuant to investigation, Detective Bobbs interviewed Appellant regarding these allegations. Detective Bobbs testified that Appellant told him, "I picked her up and secured her body against mine like a baby. Her buttocks was in my hand. Yeah, I did it. It was intentional." The [d]etective told Appellant that this was not the allegation he was investigating, that the allegations were more sexual in nature. Appellant stated to the [d]etective, "I stuck my hand on the front of her pants and touched her vagina." Appellant said this happened in TT's bedroom. Appellant told Det. Bobbs that he kissed A.W. on the lips at one point and told her that he loved her. The [d]etective testified that Appellant denied touching A.W. under her clothing.

Appellant testified that he had been friends with [TT] as a child and reconnected with her in 2014. He stated that he frequently visited her house where they would play cards with several other people. He testified that he saw A.W. while at [TT's] house. In addition, Appellant indicated that he and A.W. are "distant

- 2 -

cousins." He testified that he did not have any memory of any of the allegations of sexual abuse. Appellant agreed to be interviewed by the police. Appellant testified that after approximately 25 minutes of denials, his emotions got the better of him and he said that he "did it." He told the [d]etective that he touched A.W. on her vagina on the inseam of her pants. Appellant stated that he told the police that he kissed A.W. on the cheek but did not tell them that he kissed her on the lips. Appellant told A.W. that he loved her after A.W. had broken her arm. On the witness stand, he flatly denied touching A.W. in any type of sexually inappropriate manner.

Trial Court Opinion, 1/16/2018, at 2-4 (record citations omitted).

On April 27, 2016, a jury convicted Appellant of the aforementioned crimes. On July 19, 2016, the trial court sentenced Appellant to an aggregate term of 20 to 40 months of imprisonment, with a consecutive term of three years of probation. Moreover, in the sentencing order, the trial court ordered Appellant to register for life as a Tier III sex offender under SORNA.[2] However, the trial court did not order an assessment or otherwise determine Appellant to be a sexually violent predator (SVP). On August 28, 2017, the trial court reinstated Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*. Appellant filed a post-sentence motion that the trial court denied on September 19, 2017. This timely appeal resulted.[3]

---

[2] The Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10–9799.41. "SORNA was enacted on December 20, 2011, and became effective on December 20, 2012. SORNA recently was amended on February 21, 2018, by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018." **Commonwealth v. Golson**, 189 A.3d 994, 1003 (Pa. Super. 2018).

[3] Appellant filed a notice of appeal on October 16, 2017. On November 8, 2017, the trial court ordered Appellant to file a concise statement of errors

On appeal, Appellant presents the following issues for our review:

I.      Did the trial court abuse its discretion in denying the motion for a new trial on the grounds that the guilty verdicts for indecent assault, unlawful contact with a minor, and corruption of minors were contrary to the weight of the evidence presented in that the Commonwealth's evidence was of such low quality, tenuous, vague, and uncertain as to make the verdict of guilty pure conjecture; and, therefore, shocks the conscience of the Court?

II.     Did the trial court impose an illegal sentence in imposing a lifetime registration requirement under SORNA, thereby exceeding the statutory maximum sentences possible for his convictions?

Appellant's Brief at 7.

Appellant first contends that his convictions are against the weight of the evidence presented at trial. *Id.* at 19-34. Appellant argues that the victim's testimony "was vague, uncertain, and inconsistent." *Id.* at 23. He claims the victim "stretched the truth with regard to her interactions with [Appellant] in order to gain her mother's sympathy." *Id.* at 28. Appellant further posits that because "five or more adults [were inside Aunt TT's] house when the incidents occurred, [there was] reasonable doubt as to whether any of the contact A.W. described occurred, and that if it did, that it was for the purpose of arousing or gratifying sexual desire in either A.W. or [Appellant]." *Id.* at 29.

Our standard of review is as follows:

_____

complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on November 21, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 16, 2018.

- 4 -

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

* * *

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

* * *

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Rodriguez*, 174 A.3d 1130, 1139–1140 (Pa. Super.

2017) (internal citations and quotations omitted).

In this case, the trial court determined:

The jury reasonably found credible the testimony of the victim, A.W. She testified in detail at trial about three specific instances of criminal contact at [Aunt TT's] house over an extended period of time. Her testimony was corroborated by [] her mother and Detective Bobbs. The jury reasonably rejected Appellant's testimony as nothing but a self-serving denial. Upon further review of the evidence, [the trial court's] sense of justice [was] not shocked by the jury's verdict in this case as it was not against the weight of the evidence but rather supported by it.

- 5 -

Trial Court Opinion, 1/16/2018, at 5.

Upon review, we discern the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim. As the trial court recognized, the victim's testimony was detailed and corroborated. Moreover, on appeal, Appellant overlooks the fact that he admitted to police that he touched the eight-year-old victim's vagina. We conclude that the trial court did not abuse its discretion in determining the verdict did not shock the conscience of the court. Accordingly, Appellant's weight of the evidence claim fails.

Next, relying on our Supreme Court's decision in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) and this Court's subsequent decision in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2018), Appellant contends that his lifetime registration requirements under SORNA are illegal.[4] Appellant's Brief at 35-40.

We recently summarized our Supreme Court's holding in ***Muniz***, as follows:

> In ***Muniz***, the defendant was convicted in February 2007 of two counts of indecent assault of a person less than 13 years of age with sentencing scheduled for May 2007. [***Muniz***, 164 A.3d] at 1193. At the time of his conviction, Muniz "would have been ordered to register as a sex offender with the Pennsylvania State Police for a period of ten years pursuant to then-effective Megan's Law III." ***Id.*** at 1192 (*citing* 42 Pa.C.S.A. § 9795.1 (expired)). Muniz, however, never appeared for sentencing and absconded

---

[4] Appellant did not raise this issue in his Rule 1925(b) concise statement; however, a challenge to the legality of a sentence based upon ***Muniz*** may be raised for the first time on appeal. ***See Butler***, 173 A.3d at 1214.

- 6 -

until he was later apprehended in September 2014. *Id.* When Muniz was finally sentenced in 2014, the trial court ordered him to comply with the lifetime registration provisions under the then-effective SORNA, pursuant to which he was a Tier III sexual offender. *Id.* Muniz appealed.

On appeal to our Supreme Court, five of the six participating justices held that even though the General Assembly identified SORNA's enhanced registration provisions as non-punitive, they nonetheless constituted punishment. *Id.* at 1218. The Supreme Court further determined that the retroactive application of SORNA's registration requirements to Muniz violated the *ex post facto* clause of the Pennsylvania Constitution. *Id.* at 1218–1219. Our Supreme Court explained:

> Critical to relief under the *ex post facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.
>
> *             *             *

Because Muniz committed his crimes prior to the existence of SORNA, the Supreme Court determined that application of that statute would inflict greater punishment than the law (Megan's Law III) in effect at the time he committed his crimes. Consequently, our Supreme Court concluded that the retroactive application of SORNA's registration and reporting requirements to Muniz violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *Id.* at 1223.

*Commonwealth v. Horning*, 2018 WL 3372367, at *3–4 (Pa. Super. July 11, 2018).

Thereafter:

In light of *Muniz*, this Court determined: "[U]nder *Apprendi* [*v. New Jersey*, 530 U.S. 466, (2000) ] and *Alleyne* [*v. United States*, 570 U.S. 99 (2013)] a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him ... likely to engage in predatory sexually violent offenses, that increases the length of registration must be found

- 7 -

beyond a reasonable doubt by the chosen fact–finder." ***Commonwealth v. Butler***, 173 A.3d 1212, 1217 (Pa. Super. 2017) (internal quotations and citations omitted). The ***Butler*** Court further held "section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact– finder making the necessary factual findings beyond a reasonable doubt." ***Id.*** at 1218. The Court therefore concluded that trial courts no longer can designate convicted defendants as SVPs or hold SVP hearings "until our General Assembly enacts a constitutional designation mechanism." ***Id.*** The ***Butler*** Court directed trial courts to apply only the applicable tier–based registration period, as those periods apply based on the conviction itself, and not due to any additional fact not found, under SORNA's procedures, by the fact–finder. The Court ultimately reversed the order finding the defendant to be an SVP and remanded to the trial court for the sole purpose of issuing appropriate notice of the defendant's tier–based registration period. ***Id.***

***Golson***, 189 A.3d at 1003.

Upon review, there is no dispute that the crimes at issue took place after the enactment of SORNA in December 2012. Furthermore, Appellant acknowledges that he "was convicted **after** SORNA's enactment" and that "he did not experience any change to his registration status" because of SORNA. Appellant's Brief at 37 (emphasis in original). Thus, he was not subject to retroactive application of registration requirements in violation of the *ex post facto* doctrine. Instead, the trial court imposed Tier III registration requirements as statutorily authorized and required and Appellant is not entitled to relief under ***Muniz*** and ***Butler***.

In the alternative, Appellant argues that because the registration "consequences pursuant to SORNA are deemed 'punishment' under ***Muniz***, the lifetime registration requirement imposes a lifetime sentence which is

greater than the lawful maximum for [Appellant's] offenses."   Appellant's Brief at 40.  Accordingly, Appellant suggests that "the registration requirement in his case should be limited to the length of the sentence imposed, or [seven] years." ***Id.***

This Court has recently rejected this argument.  ***See Commonwealth v. Strafford***, 2018 WL 3717081, at *3 (Pa. Super. 2018) (SORNA's registration requirements are authorized punitive measures separate and apart from a defendant's term of incarceration, the legislature did not limit the authority of a court to impose registration requirements only within the maximum allowable term of incarceration, and in fact, the legislature requires courts to impose registration requirements in excess of the maximum allowable term of incarceration).  As such, Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2018