J-S26008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEROME KEYES | : | |
| | : | |
| Appellant | : | No. 987 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003276-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 21, 2020**

Jerome Keyes (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of rape and simple assault – bodily injury.[1] Upon review, we affirm.

In the early morning hours of October 17, 2018, the victim, D.V., walked to a convenience store in Erie to buy cigarettes.  N.T., 4/10/19, at 11-12. D.V. exited the store and began to walk back to her home, which was nearby. *Id.* at 13.  While D.V. was walking, a man, whom D.V. later identified as Appellant, approached her and held a pointed object to her neck.  *Id.* at 15-16.  D.V. put her hands in the air and Appellant demanded that she enter his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 2701(a)(1).

semi-truck, which was parked nearby. *Id.* at 16-17. D.V., fearing for her life, complied. *Id.* at 17.

Appellant followed D.V. into the truck, drove off, and demanded that D.V. enter the rear cabin area and take off her clothes. *Id.* at 18, 22. Appellant parked the truck and joined D.V. in the cabin area, where she was lying on a bed. *Id.* at 23-26, 28. D.V. testified that she had no means of escape. *Id.* at 31. Appellant removed his clothes and told D.V. to lay on her stomach. *Id.* at 24, 28. Appellant penetrated her anus with his penis, which "hurt really bad" and caused her to evacuate her bowels. *Id.* at 29-30. Appellant also penetrated her vagina. *Id.* at 31. Appellant forced D.V. to perform oral sex on him. *Id.* at 32. This caused her to gag, and Appellant smacked her on the right side of her head. *Id.* at 33-34. Appellant also (1) punched D.V. in the eye when she begged him to stop the painful sex, *id.* at 34; (2) ripped out multiple patches of D.V.'s hair and choked her, *id.* at 37; and (3) threatened to kill D.V. if she did not comply with his demands. *Id.* at 37-38. Appellant kept repeating the pattern of anal, vaginal and oral sex, which, D.V. estimated, lasted an hour. *Id.* at 32, 35-37.

D.V. testified that Appellant eventually stopped the assault to clean himself, and she seized the opportunity to try to escape. *Id.* at 36. When Appellant noticed, he grabbed D.V. and stabbed her in the leg with a sharp object. *Id.* at 36, 42. D.V. managed to evade Appellant's grip and jump out of the truck completely naked. *Id.* at 36, 41-43.

D.V. ran from the truck and waved at passing vehicles, pleading for them to stop. *Id.* at 43. D.V. eventually knocked on the front door of a nearby home. *Id.* at 44. The homeowner, Beverly Denning (Denning), testified that she opened her front door at approximately 2:00 a.m. and discovered D.V., completely naked and trembling. N.T., 4/9/19, at 25-26, 28. Denning invited D.V. into her home. *Id.* at 26. D.V. stated that she had just been raped by a man in his truck; in response, Denning called 911. *Id.* at 27, 30.

At trial, D.V. testified that she lacks bowel continence as a result of the rape. N.T., 4/10/19, at 47. She also suffered a concussion, as well as injuries to her leg, feet and ovaries. *Id.* The assault caused D.V. to lose vision in one eye, and to need glasses. *Id.* at 49.

When the police interviewed D.V., she gave a physical description of her assailant and described the semi-truck as being a midnight blue or black, with no trailer, and bearing a white placard with white lettering on the side. *Id.* at

220-21.[2]  D.V. later identified Appellant from a photographic line-up as her assailant.  *Id.* at 247.  The police arrested Appellant and obtained a search warrant for his truck.  *Id.* at 248.  Forensic testing of a pillowcase taken from the truck revealed DNA from both D.V. and Appellant.  *Id.* at 251.

Appellant testified that on the day of the assault, he was driving his truck and noticed D.V. on the sidewalk, waving at him and jumping up and down.  N.T., 4/11/19, at 68.  Appellant pulled over and parked, and D.V. immediately opened the passenger door and sat down.  *Id.* at 69.  According to Appellant, D.V. told him that she was "trying to make some money"; she then grabbed his penis and took off her shirt while he was driving.  *Id.* at 71.  Appellant stated that he denied D.V.'s sexual advances, and gave her cash to help her children.  *Id.* at 72.  Appellant stated that D.V. said she had been fighting with her husband, who hit her in the head while the couple was arguing over crack cocaine.  *Id.* at 77-78.  According to Appellant, D.V. was persistent in engaging in sex acts, and directed him to park his truck to that end.  *Id.* at 73-74, 83.  Appellant complied, went to the cabin area of the truck, and found D.V. naked and smoking crack cocaine.  *Id.* at 97-98.  Appellant detailed numerous sex acts that D.V. allegedly performed upon

---

[2] The Commonwealth presented surveillance camera footage taken at a corner located near the scene of the assault.  N.T., 4/10/19, at 186-88.  The video showed a midnight blue semi-truck, with no trailer, circling the general area where the assault occurred.  *Id.* at 189-190.  Surveillance video taken from a separate camera in the area showed the same semi-truck, with matching logos, in the area, and D.V. running from the truck.  *Id.* at 232-35.

herself to entice Appellant. ***Id.*** at 97, 109-11; ***see also id.*** at 112 (Appellant stating that D.V. "raped herself" and defecated on herself while performing these acts). Appellant claimed he encouraged D.V. to put her clothes back on so they could leave; however, D.V. refused and proceeded to ingest more drugs. ***Id.*** at 124-26. Appellant stated that D.V. became increasingly paranoid and ran naked from the truck. N.T, 4/11/19, at 12-15. Appellant denied engaging in sex acts with D.V. and denied hitting her. ***Id.*** at 21-22.

The Commonwealth charged Appellant with rape and simple assault – bodily injury; the Commonwealth additionally charged Appellant with involuntary deviate sexual intercourse, sexual assault, indecent assault, and simple assault by physical menace (collectively "the remaining offenses"). Trial convened in April 2019, after which the jury convicted Appellant of rape and simple assault – bodily injury. The jury found Appellant not guilty of the remaining offenses.

By Order entered April 15, 2019, the trial court directed Pennsylvania's Sexual Offenders Assessment Board to perform an evaluation as to whether Appellant met the requirements for classification as a sexually violent predator (SVP).

On May 31, 2019, the trial court sentenced Appellant to six to 20 years in prison for rape, and imposed a consecutive six to 12 months for simple assault. Additionally, the Commonwealth notified Appellant of his obligation

to register as a sex offender for his lifetime, pursuant to the Sexual Offender

Registration and Notification Act (SORNA), 42 Pa.C.S.A. § 9799.10 *et seq.*[3]

The certified record does not contain an order relative to Appellant's SVP

classification/SOAB evaluation. However, a guideline sentence form, filed on

June 5, 2019, indicates that the trial court found Appellant to be an SVP.[4]

Appellant filed a timely notice of appeal, followed by a court-ordered

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Appellant presents three issues for review:

1. Did the Commonwealth present insufficient evidence to establish that Appellant committed rape and simple assault (causing bodily injury)[,] as the jury's inconsistent verdicts on the other related charges demonstrate that the Commonwealth could not have established the elements of the offenses beyond a reasonable doubt?

2. Does SORNA's lifetime registration requirement constitute an illegal sentence[,] as the registration/notification provisions constitute punishment and effectively extend Appellant's maximum sentence without a jury's finding of the offender's future dangerousness?

3. Does Appellant's lifetime registration requirement constitute an illegal sentence [] violative of the state and federal constitutional protections against cruel and unusual punishment?

Appellant's Brief at 9.

---

[3] SORNA mandates that based on Appellant's conviction of rape, a Tier III sexual offense, he must report as a sex offender for his lifetime. 42 Pa.C.S.A. § 9799.15(a)(3).

[4] Under SORNA, SVPs are required to report as sex offenders for their lifetime. 42 Pa.C.S.A. § 9799.15(a)(6).

Appellant first argues that the Commonwealth failed to present sufficient

evidence for the jury to convict him of rape and simple assault, because the

jury acquitted him of the remaining offenses. *See id.* at 27-32.

In reviewing a challenge to the sufficiency of the evidence:

> . . . we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence[,] coupled with the reasonable inferences drawn therefrom[,] overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the [] convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329 at 336-37 (Pa. Super. 2019)

(citation and paragraph break omitted).

Appellant argues:

> Given that a jury found beyond a reasonable doubt that Appellant committed rape, one can only conclude that the jury found the factual predicate of that offense was proven beyond a reasonable doubt, namely, that Appellant had sexual intercourse (which would include oral, anal or vaginal intercourse) with [the victim]

by forcible compulsion.[5]  If the jury concluded that this factual predicate was proven, how did the jury conclude that Appellant had not also committed [the remaining offenses]?

Appellant's Brief at 29 (footnote added); *see also id.* at 30 (Appellant making the same argument concerning the jury's convicting him of simple assault – bodily injury, but not simple assault by physical menace).

Appellant's claim is unavailing.  It is well settled that inconsistent verdicts are permissible in Pennsylvania.  *Commonwealth v. Rose*, 960 A.2d 149, 158 (Pa. Super. 2008).

> Inconsistent verdicts, while often perplexing, are not considered mistakes and **do not constitute a basis for reversal**.  Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment.  When an acquittal on one count is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of power which they had no right to exercise, but to which they were disposed through lenity.  Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.  Further, **an acquittal cannot be interpreted as a specific finding in relation to some of the evidence**.

*Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (emphasis added; citations, brackets, quotes and paragraph break omitted).

Appellant acknowledges the above authority.  However, he argues "this line of cases should be revisited by the Supreme Court of Pennsylvania, as the

---

5 Appellant references the statutory definitions of some of the remaining offenses, of which Appellant was acquitted, including, *inter alia*, sexual assault and indecent assault.  *See* Appellant's Brief at 29 (citing 18 Pa.C.S.A. §§ 3124.1, 3126(a)(2)).

Court should not simply speculate that a jury's inconsistent verdict was the product of lenity rather than mistake or confusion." Appellant's Brief at 31.

Even if we were to agree with Appellant's claim — we do not — we are bound by the prior published decisions of this Court and the Pennsylvania Supreme Court. *See Commonwealth v. Alston*, 212 A.3d 526, 529, n.4 (stating "this Court is bound by existing precedent and continues to follow controlling precedent unless it is overturned by our Supreme Court." (Pa. Super. 2019) (citation omitted)).

In addition, the evidence adduced at trial, as summarized in our factual recitation, *supra*, is sufficient to sustain Appellant's convictions of rape and simple assault – bodily injury,[6] where:

(1) D.V. described Appellant's numerous, horrific assaults in great detail, *see* N.T., 4/10/19, at 18-43;

(2) Once D.V. was able to flee after Appellant had repeatedly raped and struck her, she *immediately* reported the rape to Denning, *see id.* at 43-44; N.T., 4/9/19, at 25-28;

(3) Surveillance video showed D.V., naked, running from Appellant's truck, *see* N.T., 4/10/19, at 32-35;

(4) D.V. identified Appellant as her assailant shortly after the incident, *see id.* at 247; and

---

[6] The Crimes Code provides that a person commits rape, a felony of the first degree, "when the person engages in sexual intercourse with a complainant … [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). To obtain a conviction of simple assault, the Commonwealth must prove that the defendant attempted "to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" *Id.* § 2701(a)(1).

(5) The police discovered DNA from both D.V. and Appellant on a pillowcase seized from Appellant's truck. *Id.* at 251.

Here, the jury, as fact-finder, was free to believe all, part, or none of the testimony presented, and credibility determinations are solely within its province. *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018). The jury ostensibly accepted the testimony proffered by D.V. and the Commonwealth's witnesses, and discredited Appellant's self-serving account of events. Further, the testimony of D.V., alone, was sufficient to support the jury's guilty verdict. *See Commonwealth v. Izurieta*, 171 A.3d 803, 807 (Pa. Super. 2017) (stating that the uncorroborated testimony of a sexual assault victim, if believed, alone is sufficient to support a sex offense conviction); *see also* 18 Pa.C.S.A. § 3106. Thus, Appellant's first issue is meritless.

In his second issue, Appellant contends that the requirement that he register as a sex offender for his lifetime under SORNA is unlawful pursuant to precedent.[7] *See* Appellant's Brief at 33-37.[8] Appellant relies upon the decisions in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017)

---

[7] Appellant does not mention or challenge his classification as an SVP.

[8] The Commonwealth asserts that Appellant waived this issue – as well as his third issue, which likewise implicates the legality of his sentence – for his failure to raise it in his court-ordered Rule 1925(b) concise statement. *See* Commonwealth Brief at 6. However, the Commonwealth disregards that issues implicating the legality of a sentence cannot be waived. *See Commonwealth v. Olson*, 179 A.3d 1134, 1137 n.4 (Pa. Super. 2018).

- 10 -

(holding that SORNA's registration requirements constitute criminal punishment, as opposed to a civil penalty; therefore, their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions), and ***Commonwealth v. Butler***, 173 A.3d 1212, 1218 (Pa. Super. 2017) (***Butler I***) (applying ***Muniz*** and holding that SORNA's SVP determination procedure was unconstitutional, pursuant to ***Alleyne v. United States***, 570 U.S. 99, 108 (2013), since it increases the criminal penalty to which a defendant is exposed without the fact-finder making the necessary factual findings beyond a reasonable doubt). ***See*** Appellant's Brief at 34-37.

"Issues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and our scope of review is plenary." ***Commonwealth v. Prieto***, 206 A.3d 529, 534 (Pa. Super. 2019) (citation omitted).

To the extent Appellant relies upon ***Butler I***, ***supra***, that case is no longer good law. In reversing ***Butler I***, the Pennsylvania Supreme Court recently held that SORNA's (1) lifetime sex offender registration and reporting requirements applicable to SVPs do not constitute criminal punishment; and (2) the procedure for designating offenders as SVPs does not violate ***Alleyne***,

*supra*. *Commonwealth v. Butler*, 226 A.3d 972, 987-93 (Pa. 2020) (*Butler II*).[9]

Moreover, Appellant's registration requirement does not run afoul of *Muniz*, *supra* (finding an *ex post* facto violation in the retroactive application of SORNA's registration provisions to defendants whose crimes occurred prior to SORNA's effective date (December 20, 2012)). In this case, Appellant was sentenced after SORNA's effective date – and after the effective date of the amendments to SORNA.[10] SORNA mandates that based on Appellant's conviction of a Tier III sexual offense, he must register as a sex offender for

_____

[9] *Butler II* was decided on March 26, 2020, during the pendency of this appeal. We note:

> When th[e Pennsylvania Supreme] Court issues a ruling that overrules prior law, [or] expresses a fundamental break from precedent, upon which litigants may have relied, … th[e Supreme] Court announces a new rule of law. One of the hallmarks of whether th[e Supreme] Court has issued a new rule of law is if the decision overrules, modifies, or limits any previous [appellate] opinions …. While retroactive application of a new rule of law is a matter of judicial discretion usually exercised on a case-by-case basis, the general rule is that the decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of the changes in the law.

*In the Interest of L.J.*, 79 A.3d 1073, 1087 (Pa. 2013) (citations and quotation marks omitted); *see also In re J.C.*, 2020 PA Super 115, **12-13 (Pa. Super. 2020) (*en banc*) (applying the new rule of law announced in *Butler II* retroactively).

[10] *See* H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018 (effective February 21, 2018); H.B. 1952, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 29 of 2018 (effective June 12, 2018).

life. **See** 42 Pa.C.S.A. § 9799.15(a)(3). Therefore, there was no retroactive application of SORNA. **See Prieto**, 206 A.3d at 535 (relying upon **Commonwealth v. Golson**, 189 A.3d 994, 1003 (Pa. Super. 2018) (directing "trial courts to apply only the applicable tier-based registration period, as those periods apply based on the conviction itself, and not due to any additional fact not found, under SORNA's procedures, by the fact-finder.")). Appellant's second issue is meritless.

In his third and final issue, Appellant asserts that SORNA's lifetime registration requirement violates his constitutional protection against cruel and unusual punishment. **See** Appellant's Brief at 38-40. We disagree, based upon this Court's prior decisions rejecting this same argument. **See Prieto**, 206 A.3d at 536; **see also In re J.C.**, 2020 PA Super 115, **14-15. Accordingly, Appellant's third issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2020

- 13 -