J. A21037/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MIGUEL MINO-ROJAS, | : | No. 2859 EDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered May 13, 2019,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0002050-2018

BEFORE:  LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　**FILED NOVEMBER 13, 2020**

Miguel Mino-Rojas appeals from the May 13, 2019 judgment of sentence of life without the possibility of parole entered by the Court of Common Pleas of Montgomery County following his conviction of two counts of murder in the first degree, and one count each of possessing instruments of crime, possession of a weapon, and person not to possess a firearm.[1]  After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> . . . On February 26, 2018, at 12:12 a.m., the Norristown Police Department was dispatched to respond to a report of a shooting at 739 Chain Street in Norristown, Montgomery County, Pennsylvania.  On arrival at the scene, officers found a car in the roadway with two male gunshot victims inside the car, one of whom was pronounced dead at the scene with

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 907(a), 907(b), and 6105(a)(1), respectively.

the other victim pronounced dead after being transported to the hospital. An investigation into this double homicide began and a search warrant was issued for the residence at 808 Kohn Street, in Norristown. On February 26, 2018, at 3:20 p.m., officers executed the search warrant. Then, an officer witnessed a male throw a revolver out of a third floor rear window of the residence. This revolver was recovered and the male who threw it was identified as appellant.

After being arrested and taken to the Norristown Police Station, detectives interviewed appellant. Appellant told detectives that on the evening of February 25, 2018, he was on Chain Street with another person to purchase cocaine. Appellant said he was armed with the same revolver that was recovered during the earlier search. Appellant stated that he had arranged to make the drug purchase with a man he refers to as "Whey" and that he expected to receive a call from "Whey" upon his arrival at Chain Street. Appellant then told detectives, that he approached the passenger side of a car with two occupants. During the transaction appellant saw the male in the passenger seat reach for something and in response appellant pulled out his gun and fired two shots in the car. After firing the shots and running to the driver's side of the car, appellant fled from the scene without taking anything from the car.

On February 26 and 28, 2018, detectives interviewed Alejandro Velasquez. Velasquez admitted he was a cocaine dealer and informed detectives that he was the owner of the car that was found on Chain Street. Velasquez stated that he loaned the car to the two victims on February 25, 2018 the date he received a phone call from appellant requesting cocaine. Velasquez informed the victims that appellant wanted to buy some cocaine and to meet him on Chain Street.

. . . .

On February 27, 2018, a criminal complaint was filed charging appellant with: two counts of first degree

- 2 -

murder; two counts of second degree murder;[2] two counts of third degree murder;[3] person not to possess a firearm; possessing instruments of crime; and possession of a weapon. On March 23, 2018, the complaint was amended and two counts of robbery[4] were added and at the conclusion of the preliminary hearing[,] all charges were held for court.

On November 5, 2018, a motion to suppress statements was filed by defense counsel. On December 18, 2018, after oral arguments, an order was issued by the trial court denying defense counsel's motion to suppress statements. On April 1, 2019, the jury trial commenced on all charges except the charge of person not to possess a firearm, which was decided by the trial court in a simultaneous bench trial. On April 5, 2019, the jury returned a verdict of guilty on two counts of first degree murder, possessing instruments of crime, and possession of weapon. The jury acquitted appellant on the two counts of robbery. The trial court also found appellant guilty of the charge of person not to possess a firearm.

On May 13, 2019, appellant was sentenced to two consecutive life terms on the counts of first degree murder. On the charge of person not to possess a firearm, appellant was sentenced to a concurrent sentence of six and a half to fourteen (14) years. No further penalty was imposed on the charges of possessing instruments of crime and possession of weapon. On May 23, 2019, appellant filed his post-sentence motion. Subsequently, on September 6, 2019, the trial court denied said motion.

On September 30, 2019, appellant filed his notice of appeal from the trial court's order. On October 2, 2019, the trial court directed appellant to file his

---

[2] 18 Pa.C.S.A. § 2502(b).

[3] 18 Pa.C.S.A. § 2502(c).

[4] 18 Pa.C.S.A. § 3701(a)(1)(i).

concise statement of [errors] complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure [] § 1925(b). [Appellant filed a timely Rule 1925(b) statement on October 18, 2019. On November 27, 2019, the trial court filed an opinion.]

Trial court opinion, 11/27/19 at 1-4 (record citations and extraneous capitalization omitted.)

Appellant raises the following issues for our review:

1. Did the suppression court err in not suppressing [appellant's] February 26, 2018 statement when it was taken in violation of [appellant's] Fifth Amendment rights as provided for in *Miranda v. Arizona*, 384 U.S. 436 (1966)?

2. Did the trial court err in not granting a mistrial given the compound prejudicial statements made by the prosecution: (1) when the Commonwealth referenced [appellant's] request for an attorney, a request protected by the Fifth Amendment, in its opening statement, and (2) when the Commonwealth made inflammatory statements in its closing that both attacked the credibility and integrity of defense counsel and which also bolstered/vouched for the credibility of its witness, A[ssistant] D[istrict] A[ttorney] Fancher, including referencing facts not in record?

Appellant's brief at 3-4.

In his first issue, appellant claims the trial court erred in denying his motion to suppress because the police violated his Fifth Amendment rights as delineated in *Miranda*, *supra*. (*Id.* at 32-43.) Specifically, appellant alleges: (1) he was "subjected to psychologically coercive pressures of custodial

interrogation" (*id.* at 32-34); (2) the police continued to interrogate him after he requested counsel (*id.* at 34-35); and (3) the police engaged in the "functional equivalent of interrogation" after appellant requested counsel (*id.* at 35-43). We disagree.

Our standard of review for challenges to the denial of a suppression motion:

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012) (citations omitted), *appeal denied*, 65 A.3d 413 (Pa. 2013).

In its Rule 1925(a) opinion, the trial court set forth the circumstances surrounding appellant's statement to the police as follows.

> On February 26, 2018, appellant was arrested after police executed the warrant at 808 Kohn Street in Norristown, Pa., at 3:20 p.m., appellant was handcuffed, and transported in a police car to the

Norristown Police Department. At the suppression hearing, the trial court heard testimony from Detective William Mitchell Jr. that on February 26, 2018 at 3:59 p.m., he along with another detective attempted to interview appellant about the homicides that occurred the day before. Appellant informed him that he did not want to speak with him and wanted a lawyer at which point in time the interview ceased and appellant was placed in a holding cell.

At approximately 6:00 p.m. Detective Stephen Sowell, testified that he heard appellant call out from his holding cell and that when he came to the cell, appellant asked what the charges for which he was being held were. Sowell responded that he did not know, but asked if he could say a prayer for appellant who responded that he could. After the prayer, Sowell left the holding area. Detective Mitchell testified, that after interviewing appellant's sister, she asked to speak to appellant. Appellant was subsequently brought from his cell to speak to his sister for seven minutes and was then returned to his cell at 6:21 [p.m.]

Detective James Angelucci testified that at approximately, 6:50 p.m., appellant called out from his holding cell, at which time Detective Angelucci went to check on appellant who informed the detective that he wanted to speak with a supervisor. Angelucci informed appellant that he was a supervisor, at which point, appellant asked if he could speak with the detectives who were handling his case as he was ready to talk. Angelucci testified that upon hearing appellant's request he left the holding cell area, found and informed the investigating detectives that appellant wanted to speak with them again. Detective Mitchell then testified that at 7:03 p.m., appellant was brought from the holding cells, to the Detectives' Division, where [] the detectives were situated. Detective Mitchell reinitiated the interview process with appellant after verifying with appellant that he wanted to speak with them again without an attorney present. Detective Mitchell then read and provided appellant with the ***Miranda*** warning form,

> which appellant reviewed, and confirmed he[] understood. Appellant then signed and initialed the form indicating he wished to talk. Subsequently, from 7:08 [p.m.] to 8:41 p.m., Detective Mitchell conducted an interview and took a seven-page statement from appellant.

Trial court opinion, 11/27/19 at 6-8 (record citations and extraneous capitalization omitted).

Prior to addressing the merits of appellant's first issue, we must address whether it is properly before us. In his motion to suppress, appellant raised three challenges to the voluntariness of his statement: (1) the police failed to provide counsel for appellant; (2) there was a delay in arraigning appellant; and (3) appellant was intoxicated at the time he gave the statement. (Motion to suppress statements, 11/5/18 at 6 and 9.)

During opening statements at the suppression hearing, defense counsel reiterated the issues being raised were a failure to honor appellant's request for counsel, a claim the police improperly re-engaged with appellant, and his alleged intoxication. (Notes of testimony, 12/14/18 at 5-6.) The questioning by counsel at the hearing reflected the issues raised in the written motion to suppress, as she mainly focused on the issues of intoxication, failure to obtain counsel for appellant, and failure to arraign. (*Id.* at 8-130.) In her closing arguments, counsel again focused on the three issues raised in the written motion to suppress, with a passing request the trial court "consider" the involvement of Detective Sowell and whether he improperly re-engaged with appellant causing appellant to revoke his request for counsel. (*Id.* at 138.)

Counsel also briefly argued the involvement of appellant's sister played a role in his confession as did Detective's Sowell's prayer but counsel never moved to amend her motion to raise these issues. (*Id.* at 141-42.)

In his Rule 1925(b) statement, appellant phrased the issue on appeal as follows:

> [t]he [c]ourt erred in not suppressing [appellant's] February 26, 2018 statement for the following reasons: (1) it was taken in violation of [appellant's] Fifth Amendment rights because it was taken after [appellant] had requested an attorney and prior to one being provided to him, and (2) it was not voluntary. *See*, *e.g.*, N.T. 12/14/18 "Motions Hearing," p. 133.[5]

Rule 1925(b) statement, 10/18/19 at 1.

Because of this, the trial court's Rule 1925(a) opinion focused on the issue of intoxication (trial court opinion, 11/27/19 at 8-9) and the issue of whether he reinitiated conversations with police (*id.* at 9-10). The trial court ultimately concluded appellant's waiver of his **Miranda** rights was knowing and voluntary. (*Id.* at 11.)

On appeal, appellant has abandoned all these contentions with the partial exception of the questionably preserved reinitiation issue. As cited above, the issues he raises are psychological coercion caused by the manner

---

[5] Page 133 is the first page of defense counsel's closing argument. In it, the only issue she mentions regarding the voluntariness of appellant's statement is he was intoxicated. (Notes of testimony, 12/14/18 at 133.) Thus, it appears the only issues appellant intended to raise on appeal were the intoxication issue referenced at page 133 of the hearing transcript and the failure to provide appellant with counsel.

in which he was arrested and treated at the police station; a claim the police continued to interrogate him after he invoked his right to counsel; and a claim the police engaged in the "functional equivalent of interrogation" after he requested counsel.[6]

We have held, "appellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272-1273 (Pa. Super. 2006); *see also Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression."), *appeal denied*, 946 A.2d 687 (Pa. 2008) (parallel citation omitted). Here, as appellant raises three new issues on appeal, he waived his suppression claim.

Further, it is well established any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). An appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify

---

[6] While this third issue contains some of the elements of the improper reinitiation of contact claim, which defense counsel raised for the first time in her closing argument at the suppression hearing, it also goes well beyond it, including a claim the police induced appellant's sister to act as their agent, which was never raised below. (Appellant's brief at 38-41.)

and address the issues the appellant wishes to raise on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(ii) (requiring a Rule 1925(b) statement to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"). A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal. ***See Commonwealth v. Dowling***, 778 A.2d 683, 686-687 (Pa. Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all").

Here, the Rule 1925(b) statement quoted above was far too vague to alert the trial court appellant was abandoning the issues raised at the suppression hearing (particularly where the transcript page cited to in the statement concerned intoxication) and raising the issues raised herein. (Rule 1925(b) statement, 10/18/19 at 1.) Because of this, the trial court generally did not address these contentions in its opinion.[7] (Trial court opinion, 11/27/19 at 5-10.) Therefore, we must conclude appellant waived his suppression claim for this reason as well.

In any event, appellant's contentions lack merit. Appellant argues the trial court erred in holding he knowingly and intelligently waived his ***Miranda***

---

[7] As previously mentioned there is some overlap between appellant's third contention and his closing argument at the suppression hearing, so the opinion contains some discussion of whether appellant reinitiated contact with the police. (Trial court opinion, 11/27/19 at 9-10.)

rights. It is settled under the United States and Pennsylvania Constitutions an individual subject to a custodial interrogation has a right to remain silent. *See Miranda*, *supra*; *Commonwealth v. Boyer*, 962 A.2d 1213, 1216 (Pa.Super. 2008) (citation omitted). An individual may, however, waive his right to remain silent.

> It is the Commonwealth's burden to establish that a defendant knowingly and voluntarily waived his *Miranda* rights. A defendant must explicitly waive his *Miranda* rights by making an outward manifestation of that waiver. The determination of whether a waiver is valid depends on:
>
>> (1) whether the waiver was voluntary, in the sense that defendant's choice was not the end result of government pressure, and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

*Commonwealth v. Mitchell*, 902 A.2d 430, 451 (Pa. 2006) (citations and parallel citation omitted), *cert. denied*, 549 U.S. 1169 (2007) (parallel citations omitted).

If the totality of the circumstances reveals an uncoerced choice and the requisite level of comprehension, a court may properly find *Miranda* rights have been waived. *See*, *e.g.*, *Commonwealth v. Martin*, 101 A.3d 706, 724 (Pa. 2014) (parallel citation omitted), *cert. denied*, 136 S.Ct. 201 (U.S. 2015) (parallel citations omitted); *Commonwealth v. Cephas*, 522 A.2d 63, 65 (Pa.Super. 1987) (parallel citation omitted), (finding defendant's

schizophrenia rendered him unable to knowingly and voluntarily waive *Miranda* rights), *appeal denied*, 531 A.2d 1118 (Pa. 1987) (parallel citations omitted), *cert. denied*, 484 U.S. 981 (1987) (parallel citations omitted).

> Factors this Court may consider include: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion. *See Martin*, 101 A.3d at 724-725.

*Commonwealth v. Lukach*, 163 A.3d 1003, 1011-1012 n.7 (Pa.Super. 2017) (quotation marks omitted), *affirmed*, 195 A.3d 176 (Pa. 2018) (parallel citation omitted).

Here, appellant first claims the manner of his arrest, the seizure of his clothing, and his being placed alone in a cell after he invoked his right to counsel amounted to psychological coercion. (Appellant's brief at 32-34.) We disagree.

In determining whether a confession was the product of psychological coercion, we examine, "whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and

unconstrained decision to confess." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 525 (Pa. 2017) (parallel citation omitted). While the conditions of custody are a factor in making that determination, ***see id.***, appellant provides no legal backing for a contention the use of a SWAT team in making the arrest should be considered as one of the factors. Moreover, presumably because this issue was not raised in appellant's motion to suppress, the record below is all but devoid of any information regarding the circumstances surrounding appellant's arrest. (Notes of testimony, 12/14/18 at 8-11.) Certainly, there is nothing in the record which suggests appellant was injured or needed medical treatment as a result of the arrest, a factor which we would have considered in determining the voluntariness of his confession. Moreover, despite appellant's insinuations to the contrary, there is nothing in the record which supports a claim the police seizure of appellant's clothing and placing him alone in a cell after he invoked his right to counsel was anything other than the standard procedures of the Norristown Police Department. (***See*** appellant's brief at 32-34; notes of testimony, 12/14/18 at 25-30.) Appellant does not allege the seizure of his clothing was illegal and offers no corroboration for the claim the mere placement of a suspect in a holding cell after invocation of the right to counsel constitutes psychological coercion. Even if not waived, this contention would not merit relief. ***See Commonwealth v. Rushing***, 71 A.3d 939 (Pa.Super. 2013) (holding placement of defendant in cold, concrete cell without socks or shoes for three

hours, while not allowing him to have food, drink, or go to bathroom prior to reading of *Miranda* rights did not amount to unconstitutional coercion), *reversed on unrelated grounds*, 99 A.3d 416 (Pa. 2014).

Appellant next argues the police continued to interrogate him after he invoked his right to counsel. (Appellant's brief at 34-35.) Appellant does not cite to the record to corroborate this contention, and we have been unable to locate anything in the record which would substantiate this claim. Again, even if not waived, this issue would not merit relief.

Appellant maintains his reinitiation of contact with the police was not valid because the police had engaged in the "functional equivalent" of interrogation with him after he invoked his right to counsel. (Appellant's brief at 35-43.) Specifically, appellant avers "detectives sent [his] sister to talk to [him], while the detectives remained in the room, so that she could tell [appellant] that one of the victims was their uncle." (Appellant's brief at 39.) Appellant suggests this constituted using her as "an instrumentality of the investigation," within the meaning of the Supreme Court of Pennsylvania's decision in *Commonwealth v. Bordner*, 247 A.2d 612, 617 (Pa. 1968) (parallel citation omitted). (*Id.*) Further, appellant contends Detective Sowell initiated contact with him, and because of their long acquaintance, his prayer with appellant was made for the purpose of eliciting a confession. (*Id.* at 37-39.) We disagree.

Initially, appellant's version of the interaction with his sister is simply not accurate. The uncontradicted testimony of Montgomery County Detective William Mitchell was appellant's sister came to the police station to give a statement; when the statement was finished, she asked to see her brother. (Notes of testimony, 12/14/18 at 32-33.) She was given permission to see him, which was not unusual, but was told police regulations required an officer be present. (*Id.* at 35-36, 40.) Detective Mitchell did not coach her or tell her to mention anything in particular to appellant; his personal belief was the sister wanted to speak with appellant to tell him one of the victims was his uncle, but the sister did not tell him what she was going to speak to appellant about. (*Id.* at 36-44.) The two spoke for less than ten minutes; Detective Mitchell was present, but the conversation was entirely in Spanish and he did not speak or understand Spanish. (*Id.*) Neither appellant nor his sister testified at the suppression hearing. Thus, nothing in the record demonstrates his sister acted in any way as an agent of the police.

Moreover, appellant's reliance on *Bordner*, *supra*, is misplaced. In *Bordner*, the defendant shot and wounded both his parents with a shotgun and set a fire in their home, which resulted in the death of seven of the defendant's siblings. *Bordner*, 247 A.2d at 407-408. In order to obtain a confession, without reading the defendant his *Miranda* warnings, the police induced the mother to visit the defendant for the sole purpose of obtaining a confession; further, the father volunteered his services to the police, and

again, without *Mirandizing* the defendant, the police fed questions to father, and otherwise assisted father in obtaining several incriminating statements from the defendant. *Id.* at 409-411. Our supreme court found all the statements made during these various interrogations by the defendant's parents were inadmissible, holding the police instigated the circumstances under which the defendant confessed to his mother and his father was actively acting as a collaborator with the police during the other incidents. *Id.* at 414-418.

Here, unlike in *Bordner*, the uncontradicted evidence was the sister voluntarily asked to see appellant, she was not coached by the police, appellant did not make any incriminating statements to the police in her presence, and most importantly, we have no idea what took place during their brief conversation. While defendant speculates the sister emotionally manipulated him by telling him he had killed his uncle, this is just that, speculation. The only two people who knew what took place during the conversation were the sister and appellant; defense counsel elected not to call either during the suppression hearing. Thus, we cannot find the sister acted as an active assistant to the police within the meaning of our supreme court's decision in *Bordner*, *supra*.

Appellant's account of the interaction with Detective Sowell is also less than precise. The uncontradicted testimony of Detective Sowell was he was on his way to the bathroom when appellant called out to him from the holding

cell. (Notes of testimony, 12/14/18 at 106-107.) Detective Sowell had known appellant for approximately nine years through various community outreach programs. (*Id.* at 101-103.) Detective Sowell knew the police were detaining appellant in connection with a double homicide but did not know he was under arrest, the specifics of any charges, or that appellant had invoked his right to counsel. (*Id.* at 103, 112-113.) Appellant asked Detective Sowell several questions about the specifics of the charges against him and how long he would be held; Detective Sowell said he did not know the answer. (*Id.* at 107-108.) Detective Sowell asked appellant if he could, "say a kind word for him." (*Id.* at 108.) Detective Sowell then asked if appellant believed in God. (*Id.*) Appellant stated he did not know. (*Id.*) Detective Sowell commented he believed, "life has been a little unfair to you," and asked if he could say a prayer for appellant; who agreed. (*Id.*) Detective Sowell then said the following, "God, please bless [appellant], please look over him and his family and please help him remove anger from his heart." (*Id.* at 108-109.) This encounter occurred at approximately 6:00 p.m. (*id.* at 109-1110); at approximately 6:50 p.m.; appellant yelled for a supervisor and then asked to speak with the detectives. (*Id.* at 53-55.) Subsequently, after Detective Mitchell gave appellant his *Miranda* warnings and appellant signed the waiver form, appellant confessed to the killings. (*Id.* at 63, 76-77.)

In *Commonwealth v. Rushing*, *supra*, the appellant committed multiple gruesome murders, assaults, and kidnappings. *Rushing*, 71 A.3d at

945-946. Following his arrest, an attorney, who heard about the arrest but had not been retained by the appellant, arrived at the police station, requested the police not speak with the appellant, and asked to speak with appellant; the assistant district attorney refused the request. *Id.* at 946-947. A police detective then read the appellant his *Miranda* rights but did not tell him that counsel was present and wished to speak to him. *Id.* at 947. The appellant waived his right to remain silent, admitted he was at the scene of the crime, but claimed he did not remember anything else. *Id.* The detective then testified he asked the appellant,

> if he was a religious man, if he believed in God, and told him that now is the time to ask for forgiveness because of his judgment day when he is standing in front of God that he's not going to be able to hide behind the statements that he didn't remember. . . . I told him that he could sit in front of me all he wanted and repeatedly tell me he doesn't remember what happened in that house. He could repeatedly say it's a blur and fail to provide specific details of his involvement in the heinous act. I then told him that on judgment day when he is standing in front of God, he wouldn't be able to hide behind the statements as God knows all.

*Id.* at 953-954.

On appeal, appellant challenged the voluntariness of his confession, in part, on the basis of the detective's appeal to God; this court held a reference to God did not "Warrant a conclusion that [a]ppellant's confession was involuntarily entered." *Id.* at 952. We stated, "[r]epeatedly asking an

- 18 -

accused to be truthful without implying or making direct promises or threats to the person does not result in a coerced confession." *Id.* at 954.

Here, the circumstances are much less coercive than those found acceptable in *Rushing*, *supra*. The prayer did not take place during questioning, Detective Sowell did not mention forgiveness, truthfulness, or the need to make a confession or otherwise atone or repent. (Notes of testimony, 12/14/18 at 107-109.) After the prayer, Detective Sowell immediately departed and appellant did not reinitiate contact with the police for approximately one hour. (*Id.* at 53-55.)

The trial court credited the police officers' testimony and found, under the totality of the circumstances, which included appellant's age, his prior contacts with the police, and his familiarity with his rights, appellant knowingly and voluntarily waived his *Miranda* rights. We have no basis to disturb this finding. *See Rushing*, *supra* at 952, 954. Thus, even if not waived, this claim does not merit relief.

In his second and final issue, appellant argues that the trial court erred when it denied his requests for a mistrial after the prosecutor committed misconduct in his opening statements and closing argument. (Appellant's brief at 43-71.) Specifically, appellant claims he was entitled to a mistrial after the prosecutor "explicitly referenced" his request for an attorney in his opening statement. (*Id.* at 44-48.) Moreover, appellant contends the prosecutor committed misconduct in his closing argument by bolstering his

own witness and attacking defense counsel and defense counsel's strategy. (***Id.*** at 48-71.)

We review this issue as follows. When reviewing a trial court's denial of a motion for a mistrial, particularly in the context of a prosecutor's comments during opening statements or closing argument, we assess whether the trial court abused its discretion. ***Commonwealth v. Cash***, 137 A.3d 1262, 1273 (Pa. 2016) (parallel citation omitted). A court should not grant a motion for a mistrial if cautionary instructions are enough to overcome any possible prejudicial effect. ***Commonwealth v. Bedford,*** 50 A.3d 707, 712-713 (Pa.Super. 2012) (citations omitted), ***appeal denied***, 57 A.3d 65 (Pa. 2012).

Moreover, in determining whether a prosecutor committed misconduct during opening and closing statements such as to justify the grant of a mistrial, our supreme court has stated:

> It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict.
>
> In considering appellant's claims of prosecutorial misconduct, we note that a prosecutor's comments are not evidence. . . .
>
> . . . .

> Opening statements must be fair deductions from the evidence which the prosecutor expects will be presented at trial. . . .
>
> . . . .
>
> . . . The complained-of comments must be considered in the context of the entire [closing argument] and allegations of prosecutorial misconduct will not warrant the grant of a new trial unless they are such as to arouse the jury's emotions to such an extent that it is impossible for the jury to reach a verdict based on relevant evidence.

*Commonwealth v. Bronshtein*, 691 A.2d 907, 917-918 (Pa. 1997),

*cert. denied*, 522 U.S. 936 (1997).

We first address appellant's claim the trial court erred in denying his request for a mistrial after the prosecutor's opening statements. The prosecutor here gave a protracted opening statement, some 28 pages in length, at the halfway point, approximately 15 pages into the opening, the prosecutor made the following statements:

> [Appellant] gets transported from 808 Kohn Street over to the Norristown Police Department, which is only a few minutes away. So he gets there a little bit before 4 p.m.
>
> Now, at that time, one of our homicide Detectives, Detective Mitchell, you will hear from him, a big guy. Detective Mitchell tried to interview [appellant]. He asked him if he would agree to be interviewed. **At that time [appellant] said, he wanted a lawyer.** So at that point, they put [appellant] into a holding cell at Norristown Police Department. And I believe they put him in the cell around 4:30 p.m. Again, this is Monday, February 26th.

> At that point, Detective Mitchell went on to interview another person, in fact, [appellant's] sister, who[se] name is Catalina. Around 6 p.m. -- some time passes.

Notes of testimony, 4/2/19 at 52 (emphasis added.) The prosecutor then spoke for another 13 pages without making any other references to appellant's request for counsel. Defense counsel did not object to the statement or make an immediate motion for a mistrial, and went on to make her opening statements. *Id.* at 53-77. Following her opening statement, defense counsel moved for a mistrial based upon the reference to the invocation of the right to counsel. *Id.* at 78. After hearing argument and reading cases submitted by the parties, the trial court denied the motion for a mistrial. *Id.* at 105. However, the trial court gave the following curative instruction to the jury.

> You heard the opening statements made by [the prosecutor]. You heard the opening statements made by [defense counsel].
>
> [The prosecutor] mentioned that [appellant] asked for a lawyer, thereby invoking his Constitutional Right for a lawyer and not to speak to the police.
>
> Let me instruct you on a few points of law in this regard. One, the fact that [appellant] may exercise his Constitutional Right to have any attorney before speaking to the police or choosing not to speak to the police at all is absolutely no reflection and should not be considered by you as any evidence or indication of [appellant's] guilt.
>
> It should not be considered by you in your determination of whether or not [appellant] is guilty or not guilty of any of the charges brought against him. And I so instruct you.

> Second, as a matter of law, the fact that he may have at some point invoked his right to have an attorney should not be considered by you as any indication of his guilt, and should not be considered by you in your deliberations as to whether or not [appellant] is guilty or not guilty of any of the charges. And as a practical matter, he has, in fact, given a statement.
>
> Remember that I instructed you earlier that the arguments by counsel are not evidence. And during the course of the trial, you will hear from the attorneys on numerous occasions. Always bear in mind that the attorneys are not witnesses and what they say is not evidence in this case, whether they are arguing, objecting or asking questions.
>
> The attorneys are here as advocates and spoke persons [sic] for their client's positions. And they have a duty to represent their clients zealously. All right. So now we're going to call on [the prosecutor] for his first witness.

Notes of testimony, 4/2/19 at 107-108.

Prior to addressing the merits of appellant's contention, we must first address whether it is properly before us. This court has stated, "[i]n order to preserve a claim of prosecutorial misconduct for appeal, a defendant **must make an objection** and move for a mistrial." ***Commonwealth v. Sasse***, 921 A.2d 1229, 1238 (Pa.Super. 2007), ***appeal denied***, 938 A.2d 1052 (Pa. 2007) (citation omitted, emphasis added). Further, Pennsylvania Rule of Criminal Procedure 605(B) provides:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; **the motion shall be made when the event is disclosed**. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B) (emphasis added). The failure to make a timely motion for a mistrial will result in waiver of the issue. *See Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016). "This Court has previously held that the failure to object to testimony at the time it was given precluded a subsequent motion for mistrial lodged only after the witness was excused and the court took a recess." *Id.*, citing *Wilkerson v. Allied Van Lines, Inc.*, 521 A.2d 25, 30 (Pa.Super. 1987) (holding objection waived where appellant "sat silently by and waited until the officer had completed his testimony on direct examination. It was not until much later, after [appellant's] counsel had begun to cross-examine the witness that an objection was made to the testimony which he had given on direct examination. This was too late."); *see also Commonwealth v. Boring*, 684 A.2d 561, 568 (Pa.Super. 1996) (deeming motion for mistrial, made subsequent to sustained objection, untimely when deferred until conclusion of witness testimony considerable length of time after prejudicial remark occurred); *Commonwealth v. Smith*, 410 A.2d 787, 790-791 (Pa. 1980) (request for mistrial because of witness's reference to polygraph test untimely when made approximately two or three minutes after the allegedly prejudicial statement).

Here, defense counsel not only failed to raise a timely objection to the prosecutor's statement, she waited until he finished his opening and gave her own lengthy opening statements before finally requesting a mistrial. This is simply insufficient to preserve the issue in the trial court for our review;

appellant has waived this claim. *See Tucker*, *supra* at 961; *Sasse*, *supra* at 1238.

Regardless, the claim lacks merit. We have stated:

> If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions. To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instructions. If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial.

*Commonwealth v. Moury*, 992 A.2d 162, 176 (Pa.Super. 2010) (internal citations, quotation marks, and footnote omitted).

In this case, the prosecutor's reference to appellant's post-arrest silence and request for counsel was brief and fleeting. It was an inadvertent comment made as he was describing the sequence of events after appellant's arrest. The prosecutor did not exploit appellant's request for counsel. He made no further mention of it. Finally, the trial court gave a complete curative instruction.

"[A] mistrial is not necessary where the [trial court's] cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007) (citation omitted), *cert. denied*, 552 U.S. 1316 (2008). Further, "[w]hen the trial court provides

cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court." **Commonwealth v. Parker**, 957 A.2d 311, 319 (Pa.Super. 2008) (citation and internal quotation marks omitted), **appeal denied**, 966 A.2d 571 (Pa. 2009). Thus, we find all four factors weigh in favor of finding the trial court's instruction cured any prejudice appellant may have suffered because of the prosecutor's statement. Therefore, had appellant not waived this claim, we would conclude the trial court did not abuse its discretion in denying appellant's first motion for mistrial.

Appellant also maintains the trial court erred in not granting his request for a mistrial based upon remarks made by the prosecutor in closing statements wherein the prosecutor vouched for a Commonwealth witness and personally attacked defense counsel. (Appellant's brief at 48-71.) In order to understand the genesis of appellant's claim, we briefly note the following.

One of the Commonwealth's witnesses was Alejandro Velasquez, the individual who arranged the drug deal on the night in question. In 2014, the Commonwealth charged Velasquez with a brutal aggravated assault; however, the police did not arrest Velasquez until 2017. (Notes of testimony, trial, 4/4/19 at 10-16.) The assigned assistant district attorney, Roderick McCoy Fancher, III, realized there was a serious speedy trial problem with the case and, after consulting with the police, ascertained he would be unable to survive a speedy trial motion. (**Id.**) Ultimately, he negotiated a

plea deal wherein Velasquez would plead guilty to the summary offense of harassment. (*Id.*) During cross-examination of both Velasquez and Fancher, and during closing arguments, defense counsel strongly and repeatedly implied this was a lie, and Velasquez received a very generous plea deal in return for his testimony, and because Fancher wanted to please his supervisor, the prosecutor in the instant matter. (Notes of testimony, 4/3/19 at 48-53; 4/4/19 at 16-23, 25; 44-46, 50.)

During his closing argument, the prosecutor stated the following:

> It was a fatal mistake to the case. And ADA [Fancher], remember him, he explained that to you.
>
> Now I am his supervisor, I have been for several years. So, you know, it's a challenge for me to maintain my composure when a defense attorney implies that [he] is a liar. Okay. That bothers me, folks, really offensive to me.
>
> [He] happens to be an Eagle Scout, on top of being a really good lawyer and a really good DA, and the most honest guy that any of you will ever meet.
>
> He got up there and told you about Rule 600. And you know what, he told you the truth. He made me proud. I trained him right. . . .

Notes of testimony, 4/5/19 at 97.

> You remember when [he] -- when he was testifying, [he], they said, oh, why didn't you at least argue it, have a hearing? Do you remember what [he] said? If I had did that [sic], I would lose all credibility with the court. That is exactly right, just like she did when she just made that argument. There goes her credibility."

*Id.* at 99-100.

Defense counsel did not object during the prosecutor's closing argument. Following the argument, the trial court recessed. (Notes of testimony, 4/5/19 at 111.) It was only after the court reconvened, defense counsel moved for a mistrial. (*Id.*) Following argument, the trial court denied the motion but offered to give a curative instruction, which defense counsel declined. (*Id.* at 117.)

Again, we are constrained to hold appellant waived this issue for the reasons discussed above. Specifically, defense counsel neither contemporaneously objected to the statements nor timely moved for a mistrial. *See Tucker supra* at 961; *Sasse*, *supra* at 1238.

Moreover, with respect to the claim the prosecutor personally attacked defense counsel, the claim is also waived because appellant has raised a new theory on appeal. In her motion for a mistrial, defense counsel claimed the prosecutor personally attacked her credibility with respect to the Velasquez/Fancher issue. (Notes of testimony, 4/5/19 at 111.) In his Rule 1925(b) statement, appellant vaguely claimed the prosecutor, "attacked the credibility and integrity of defense counsel[.]" (Rule 1925(b) statement, 10/18/19 at 2.) Thus, in its Rule 1925(a) opinion, the trial court addressed the issue within the context of the prosecutor's comments on the Velasquez/Fancher testimony. (Trial court opinion, 11/27/19 at 16-17.) On appeal, appellant abandons this contention and argues, for the first time, a different set of remarks by the prosecutor, never mentioned during the motion

for a mistrial, were improper because he implied defense counsel was racist. (Appellant's brief at 54-56.) We have long held that an appellant cannot raise a new theory on appeal. ***Commonwealth v. Goolson***, 189 A.3d 994, 1000 (Pa.Super. 2018) (citations omitted); Pa.R.A.P. 302(a). Thus, appellant waived his claim regarding personal attacks on defense counsel for this reason as well.

Further, even if we were to address the merits of appellant's contention he was entitled to a mistrial because the prosecutor improperly vouched for a witness, we would affirm. In its Rule 1925(a) opinion, the trial court addressed the issue thusly:

> "Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1180 (Pa. 2011). To constitute reversible error, the language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias or hostility towards the defendant, so that they could not weigh the evidence and render a true verdict. ***Commonwealth v. Holloway***, 572 A.2d 687, 693 (Pa. 1990).
>
> Here, it is clear that the Commonwealth's statements that the witness was an Eagle Scout, and "the most honest person ever" were based on personal knowledge and information not contained on the record; however, these statements did not deprive [a]ppellant of a fair trial. The Commonwealth made these statements in reference to the assistant district attorney's testimony regarding the case of a Commonwealth witness that testified at the underlying trial. These comments taken in view of all

of the evidence presented indicate that there was no prejudicial effect on [a]ppellant that warranted a mistrial. Appellant's statements concerning his prior drugs dealings with Alejandro Velasquez, [a]ppellant's February 25, 2018 calls placing his order for cocaine, and his admissions that he shot the two victims in the car, were consistent with the evidence and testimony of multiple Commonwealth witnesses. Most notably, [a]ppellant's statements were consistent with Velasquez'[s], thus rendering any bolstering by the prosecuting district attorney harmless. Accordingly, based on this overwhelming evidence of guilt it is clear that the Commonwealth's error was harmless. *See Commonwealth v. Miles*, 681 A.2d 1295, 1302 (Pa. 1996)[.]

Trial court opinion, 11/27/19 at 15-16.

We have carefully reviewed both closing statements, as well as the testimony in this case. We agree with the trial court, Velasquez's testimony was consistent with the other evidence in the case, and none of the testimony of A.D.A. Fancher implicated or even involved appellant. Given this, any error on the part of the Commonwealth was harmless. Thus, even if not waived, we would find this claim lacks merit.

Accordingly, for the reasons discussed above, we find appellant's claims are waived and/or lacking in merit. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

J. A21037/20

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20